**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory M. Messer, as Chapter 7 Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.
Melanie A. FitzGerald, Esq.

**Hearing Date: September 15, 2026 at 11:00 a.m.**
**Objection Deadline: 5:00 p.m. on September 8, 2026**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| PREMIER SURGICAL PAVILION OF OXON HILL LLC, *et al*., | Case No. 25-11607 (MEW) |
| | Jointly Administered |
| Debtors.[1] | |

------------------------------------------------------------x

**NOTICE OF THE CHAPTER 7 TRUSTEE'S AMENDED MOTION, PURSUANT TO 11 U.S.C. § 105(a) AND RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, TO APPROVE A: (I) REVISED STIPULATION BY AND BETWEEN THE CHAPTER 7 TRUSTEE AND ITRIA VENTURES LLC AS SERVICER FOR CROSS RIVER BANK; (II) REVISED STIPULATION BY AND BETWEEN THE CHAPTER 7 TRUSTEE AND PBS OF CENTRAL FLORIDA LLC; AND (III) STIPULATION BY AND BETWEEN CHAPTER 7 TRUSTEE AND SMALL BUSINESS LENDING, LLC, AS SERVICER FOR THE NALP BUSINESS LOAN TRUST 2024 1**

**PLEASE TAKE NOTICE** that on **September 15, 2026 at 11:00 a.m.**, or as soon thereafter as counsel may be heard, a hearing ("Hearing") shall be held before the Honorable Michael E. Wiles, United States Bankruptcy Judge, on the amended motion ("Amended Motion") of Gregory M. Messer, solely in his capacity as the Chapter 7 Trustee ("Trustee") of the jointly administered bankruptcy estates of Premier Surgical Pavilion of Oxon Hill LLC ("Premier") and Michael E. Jones MD PC ("MEJ" and together with Premier, the "Debtors" and each a "Debtor"), seeking the entry of an Order, pursuant to 11 U.S.C. §105(a) ("Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") approving a: (i)

[1] The Debtors are Premier Surgical Pavilion of Oxon Hill LLC, 25-11607-MEW and Michael E. Jones MD PC, 25-11745-MEW.

Revised Stipulation of Settlement between the Chapter 7 Trustee and Itria Ventures LLC, as servicer for Cross River Bank ("Itria") ("Itria Stipulation"); (ii) Revised Stipulation of Settlement between the Chapter 7 Trustee and PBS of Central Florida LLC ("PBS") ("PBS Stipulation"); and (iii) Stipulation of Settlement between the Chapter 7 Trustee and Small Business Lending, LLC, as Servicer for the NALP Business Loan Trust 2024 1 ("NALP"), and such other relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted by Zoom for Government® using the instructions on the Court's website, which can be found at https://www.nysb.uscourts.gov/zoom-video-hearing-guide**.** If you wish to appear at the Hearing, you must register your appearance utilizing the Electronic Appearance portal located on the Court's website, which can be found at **https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl**. Appearances must be entered no later than 4 p.m. one business day prior to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that objections to the Amended Motion, if any, must be in writing, conform with the Bankruptcy Code and the Bankruptcy Rules, state with particularity the grounds therefor, and be filed with the Court no later than **5:00 p.m. on September 8, 2026** ("Objection Deadline") as follows: (i) through the Court's CM/ECF system, which may be accessed through the internet at the Court's website at www.nysb.uscourts.gov, in portable document format (PDF) using Adobe Exchange Software for conversion; or (ii) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on portable media in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope to the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New

York 10004.

**PLEASE TAKE FURTHER NOTICE** that, in the event no objections are received by the Objection Deadline, an Order may be entered without a hearing having been held.

Dated: August 21, 2026
Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory M. Messer, as Chapter 7 Trustee*

By: */s/ Gary F. Herbst*
Gary F. Herbst, Esq.
Melanie A. FitzGerald, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory M. Messer, as Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.
Melanie A. FitzGerald, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 7 |
| PREMIER SURGICAL PAVILION OF OXON HILL LLC, *et al*., | Case No. 25-11607 (MEW) |
| | Jointly Administered |
| Debtors.[1] | |

**CHAPTER 7 TRUSTEE'S AMENDED MOTION, PURSUANT TO 11 U.S.C. § 105(a) AND RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, TO APPROVE A: (I) REVISED STIPULATION BY AND BETWEEN THE CHAPTER 7 TRUSTEE AND ITRIA VENTURES LLC AS SERVICER FOR CROSS RIVER BANK; (II) REVISED STIPULATION BY AND BETWEEN THE CHAPTER 7 TRUSTEE AND PBS OF CENTRAL FLORIDA LLC; AND (III) STIPULATION BY AND BETWEEN CHAPTER 7 TRUSTEE AND SMALL BUSINESS LENDING, LLC, AS SERVICER FOR THE NALP BUSINESS LOAN TRUST 2024 1**

TO: THE HONORABLE MICHAEL E. WILES,
UNITED STATES BANKRUPTCY JUDGE:

Gregory M. Messer, solely in his capacity as the Chapter 7 Trustee ("Trustee") of the jointly administered bankruptcy estates of Premier Surgical Pavilion of Oxon Hill LLC ("Premier") and Michael E. Jones MD PC ("MEJ" and together with Premier, the "Debtors" and each a "Debtor"), seeks the entry of an Order, pursuant to 11 U.S.C. §105(a) ("Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") approving a: (i) Revised Stipulation of Settlement between the Chapter 7 Trustee and Itria Ventures LLC, as

[1] The Debtors are Premier Surgical Pavilion of Oxon Hill LLC, 25-11607-MEW and Michael E. Jones MD PC, 25-11745-MEW.

servicer for Cross River Bank ("Itria") ("Itria Stipulation"); (ii) Revised Stipulation of Settlement between the Chapter 7 Trustee and PBS of Central Florida LLC ("PBS") ("PBS Stipulation"); and (iii) Stipulation of Settlement between the Chapter 7 Trustee and Small Business Lending, LLC, as Servicer for the NALP Business Loan Trust 2024 1 ("NALP"), and for such other, further and different relief as this Court may deem just and proper, and respectfully sets forth as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider and determine this Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief sought in this amended Motion ("Motion") include section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

5. On July 22, 2025 ("Premier Filing Date"), Premier filed a voluntary barebones petition ("Premier Petition") for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("Court"). See Bankr. Case No. 25-11607-MEW,[2] ECF No. 1.

6. On August 7, 2025 ("MEJ Filing Date"), MEJ filed a voluntary barebones petition ("MEJ Petition") for relief pursuant to Chapter 11 of the Bankruptcy Code in this Court. See Bankr. Case No. 25-11745-MEW,[3] ECF No. 1.

---

[2] Hereinafter, references to docket entries in the Premier bankruptcy case [25-11607-MEW] shall be referred to as "Premier ECF No."

[3] Hereinafter, references to docket entries in the MEJ bankruptcy case [25-11745-MEW] shall be referred to as "MEJ ECF No."

7. On September 23, 2025, this Court entered an Order directing the Joint Administration of the Debtors' estates. See Premier ECF No. 14, MEJ ECF No. 21.

8. By Order of the Court dated November 4, 2025, the Debtors' Chapter 11 cases were converted to cases under Chapter 7 of the Bankruptcy Code. See Premier ECF No. 31, MEJ ECF No. 23.

9. Gregory M. Messer was appointed as the interim Chapter 7 Trustee of the Debtors' estates and by operation of law has become the permanent Chapter 7 Trustee. See Premier ECF No. 32; MEJ ECF No. 24.

10. PBS is a professional employer organization ("PEO") that provides payroll administration and certain human resources services to its clients. Until April 30, 2025, the Debtors were a client of PBS. As part of its PEO services, the Debtors processed payroll through PBS. Pursuant to the Client Service Agreement, dated December 12, 2019, between PBS and the Debtors, the Debtors paid its employees through PBS. This arrangement meant that, for payroll and certain tax purposes, the Debtors' employees were listed on PBS's payroll, and, for payroll reported to PBS by its clients, it was responsible for administering wages, withholdings, and related employment tax filings on behalf of the Debtors.

11. PBS has asserted that because of the Debtors' breach of the Client Service Agreement, the Debtors owed PBS, for PBS out of pocket costs, $1,218,557.80 for payrolls processed between September 8, 2021, and December 1, 2021, and for tax deferrals taken by the Debtors for ERTC credits applied to its payrolls PBS processed for the Debtors. PBS also asserted that the Debtors owe PBS interest, costs, and attorneys' fees related to the principal debt. PBS also asserts that the Debtors defaulted on their obligation to pay benefits premiums in 2025, and as a result owe PBS $9,237.57, plus interest, costs, and attorneys' fees for these unpaid premiums.

12. The Debtors retained PBS to prepare and submit Employee Retention Tax Credit ("ERTC"), claims afforded under the CARES Act and the ERTC tax amendments, to the IRS on behalf of the Debtors. PBS filed tax amendments with the IRS for the ERTC claims ("ERTC Claims") prior to the Debtors' bankruptcy.

13. Specifically, PBS submitted tax amendments for ERTC refunds for the Debtors for the second, third and fourth quarters of the 2020 tax year and the first, second and third quarters of the 2021 tax year.

14. PBS has represented and warranted that the only monies that PBS has received on account of the Debtors' portion of the ERTC Claims are as follows: (a) in August 2023, PBS received a payment from the IRS attributable to the Debtors in the amount of $185,596.86, plus interest of $9,038.57, for the fourth quarter 2020; (b) in July 2025, PBS received an additional payment of $183,590.10, plus interest of $26,253.38, for the third quarter 2020; (c) in August 2025 (after the Petition Date), PBS received $825,700.40, plus interest of $133,350.62, for the first quarter 2021; and (d) in April 2026, PBS received $388,581.52, plus interest of $77,483.16 for the second quarter 2020. The Trustee has relied on this representation in connection with entering into the PBS Stipulation.

15. PBS has asserted that in accordance with the agreement between PBS and the Debtors, PBS was authorized to apply and credit $185,596.86, plus interest of $9,038.57 and $183,590.10, plus interest of $26,253.38, against the amounts the Debtors owed PBS, which at that time was $1,218,557.80, plus interest, costs, and attorneys' fees.

16. On October 9, 2025, PBS filed a proof of claim in the MEJ case ("Claim No. 9") in the amount of no less than $825,066.46. In Claim No. 9, PBS has asserted that it is presently owed well in excess of the $825,066.46 ("PBS Advances") from the Debtors ("PBS Claim").

17. PBS initially turned over to the Trustee the sum of $958,801.02 ("First Funds") from part of the recovery of the Debtors' portion of the ERTC Claims, which is being held by the Trustee, subject to further order of the Court. In addition, PBS sent to the Trustee an additional $466,064.68 ("Second Funds") that PBS received on account of part of the remaining ERTC Claims allocable to the Debtors.

18. On January 30, 2026, Itria filed a proof of claim in the amount of $2,052,848.93, asserting a secured claim in the Premier Debtor's estate, identified as Claim 5 ("Claim 5").

19. On January 30, 2026, Itria filed a proof of claim in the amount of $2,052,848.93, asserting a secured claim in the MEJ Debtor's estate, identified as Claim 16-1 ("Claim 16-1") (collectively Claim 5 and Claim 16-1 are the "Itria Claims").

20. Claim 5, as filed, asserts a security interest in all or substantially all the Premier Debtor's property, including, but not limited to, any tax refund on account of the ERTC Claims.

21. Claim 16-1, as filed, asserts a security interest in all or substantially all the Premier Debtor's property, including, but not limited to, any tax refund on account of the ERTC Claims.

22. On April 29, 2026, NALP filed a proof of claim in the amount of $5,727,991.81, asserting a secured claim in the Premier Debtor's estate, identified as Claim 14-1 ("Claim 14").

23. On April 29, 2026, NALP filed a proof of claim in the amount of $7,438,900.72, asserting a secured claim in the MEJ Debtor's estate, identified as Claim 18-1 ("Claim 18") (collectively Claim 14 and Claim 18 are the "NALP Claims")

24. Claim 14 as filed asserts a security interest in all or substantially all of the Premier Debtor's property. NALP maintains that it is also secured in and to any tax refund on account of ERTC Claims. NALP maintains that as additional security, MEJ executed and delivered a "Commercial Security Agreement" covering substantially all of its personal property ("MEJ

Security Agreement"), and to perfect the security interests thus granted, UCC-1 Financing Statements were duly filed against MEJ with (a) the Maryland Department of Assessments & Taxation on December 15, 2022 at financing statement number 221215-1449001; and (b) a UCC-1 Financing Statement in New York State on December 15, 2022 at Filing Number 202212150513746 ("MEJ MD Financing Statement" and "MEJ NY Financing Statement"). NALP maintains that as additional security, Premier executed and delivered a "Commercial Security Agreement" covering substantially all of its personal property ("Premier Security Agreement"), and to perfect the security interests thus granted, NALP Business Lending LLC duly filed a UCC-1 Financing Statement with the Secretary of State of Maryland ("Premier Financing Statement").

25. Claim 18 as filed asserts a security interest in all or substantially all MEJ Debtor's property. NALP maintains that it is also secured in and to any tax refund on account of ERTC Claims. NALP maintains that as additional security, MEJ executed and delivered a "Commercial Security Agreement" covering substantially all of its personal property ("MEJ Security Agreement"), and to perfect the security interests thus granted, UCC-1 Financing Statements were duly filed against MEJ with (a) the Maryland Department of Assessments & Taxation on December 15, 2022 at financing statement number 221215-1449001; and (b) a UCC-1 Financing Statement in New York State on December 15, 2022 at Filing Number 202212150513746 ("MEJ MD Financing Statement" and "MEJ NY Financing Statement").

26. The Trustee previously filed a Motion seeking to settle the asserted interests in and to the ERTC Claims with PBS and Itria. NALP objected, asserting a senior security interest in and to the ERTC Claims. Thereafter, the Trustee spent significant time seeking to resolve the NALP objection. As a result of those discussions a settlement with NALP has been reached. In addition,

because of this NALP settlement both the settlements with Itria and PBS have been revised and are being submitted to the Court simultaneously with the NALP settlement.

27. A limited objection to the initial settlement was also filed by Michael E. Jones, M.D., P.C. ("Limited Objection"). That entity is a Debtor in the instant case and is not authorized to file the Limited Objection. However, the Trustee, through his counsel, spent time discussing the Limited Objection with the counsel for MEJ. At this time there has not been a resolution. Set forth below is the Trustee response to the Limited Objection.

28. Based upon the discussions between the Trustee and Itria, a revised settlement was reached as set forth in Exhibit "A." Furthermore, based upon the discussions between the Trustee and PBS, a revised settlement was reached as set forth in Exhibit "B." Based upon the discussions between the Trustee and NALP a settlement was reached as set forth in Exhibit "C."

**RELIEF REQUESTED AND BASIS FOR RELIEF**

29. By this Motion, the Trustee seeks approval of the Revised Itria Stipulation, the Revised PBS Stipulation and the NALP Stipulation all as both being fair, equitable and in the best interests of the Debtors' estates in accordance with section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a). For the reasons set forth more fully below, the Trustee believes that the agreements reflected in the Revised Itria Stipulation, the Revised PBS Stipulation and NALP Stipulation each fall well above the lowest point in the range of reasonableness and urges the Court to approve each settlement. The terms of each Stipulation were negotiated at arms-length with each party.

30. The proposed order approving the settlements is annexed as Exhibit D.

**The Terms of the Itria Settlement**

31. Under the terms of the Itria Stipulation, Itria shall have an allowed claim against the estates in the amount of $2,052,848.93, plus interest and other costs and charges as allowed under the loan documents, secured by the ERTC Claims as compromised herein.

32. Itria has agreed to accept the compromised sum of $1,525,000 ("Itria Settlement Sum") from the recovery of the ERTC Claims, in full and final settlement and satisfaction of its secured claim against the estates. Itria shall have an allowed general unsecured claim against the estates for the balance of its claim of $527,848.93, plus interest and other costs and charges as allowed under the loan documents.

33. The $1,525,000 shall be paid as follows. Upon approval of the Itria Stipulation by final order of the Court the Trustee shall pay to Itria the sum of $350,000 in partial payment of the Itria Settlement Sum. After the Trustee makes the partial payment to Itria, Itria shall be owed $1,175,000 ("Itria Balance"). From the future funds received by the Trustee on account of the ERTC Claims the Trustee shall pay to Itria within seven business days of receipt and clearance by the Trustee of the remaining ERTC Claims, the Itria Balance. The Trustee respectfully refers the parties to the Itria Stipulation that is annexed as Exhibit A for its complete terms and conditions.

**The Terms of the PBS Settlement**

34. Under the terms of the PBS Stipulation, the Trustee shall pay PBS the sum of $800,000 ("PBS Settlement Sum"), on account of the PBS Claim and the PBS Advances, with the balance of the PBS Claim and the PBS Advances preserved for the benefit of the estates. PBS shall be paid as follows: $500,000 upon the approval of the PBS Stipulation by final order of the Court and $300,000 to be paid first from the remaining ERTC Claims.

35. PBS represents and warrants that the only monies it has received on account of the Debtors' ERTC Claim are set forth in the PBS Stipulation and PBS agrees that the Trustee is relying on such representations in entering into the PBS Stipulation.

36. PBS shall continue to pursue and seek to recover the remaining ERTC Claims on behalf of the Debtors' estates. PBS shall promptly (within ten business days) pay to the Trustee any funds received on account of the ERTC Claims. PBS shall provide the Trustee with updates as to the status of the ERTC Claims upon the Trustee's reasonable request if any such update exists.

37. The Trustee respectfully refers the parties to the PBS Stipulation that is annexed as Exhibit B for its complete terms and conditions.

**The Terms of the NALP Settlement**

38. NALP shall have an allowed claim against the estates in the amount of $5,727,991.81, plus interest and other costs and charges as allowed under the loan documents.

39. NALP has agreed to accept the compromised sum of $750,000 ("Settlement Sum") from the recovery of the ERTC Claims, in full and final settlement and satisfaction of its secured claim as against the estates and the ERTC Claims. NALP shall have an allowed general unsecured claim against the estates for the balance of its claim of $4,977,991.81, plus interest and other costs and charges as allowed under the loan documents. NALP reserves the right to amend its claim to calculate any presently unliquidated amounts contained therein and for any other purpose permitted under law.

40. After the payment of the Itria Partial Payment, the PBS Partial Payment and the NALP Partial Payment, the remaining funds of $224,865.70, previously turned over to the Trustee from PBS, shall remain property of the estate and shall be deemed preserved for the benefit of the

estates.

41. The Trustee respectfully refers the parties to the NALP Stipulation that is annexed as Exhibit C for its complete terms and conditions.

**The Limited Objection**

42. As set forth above the Limited Objection was filed to the initial settlement. Based upon several discussions and additional communications with counsel for Michael E. Jones, M.D.,P.C., the Trustee does not believe that the Limited Objection will be withdrawn and may be further revised. The Trustee responds to the Limited Objection as follows.

43. First, while the objection is purportedly filed by Michael E. Jones, M.D.P.C., that entity is one of the Debtors in this case and any action on behalf of the Debtors is dictated and determined by the Trustee. He did not authorize this filing. To the extent that the Limited Objection is on behalf of the individual Dr. Michael E. Jones ("Dr. Jones") the Limited Objection must still fail and be overruled.

44. The total proceeds of the ERTC Claims and the total assets of this case will not satisfy the full debt of these cases. According to the Claims registers as of August 21, 2026 for the Premier case the debt is over $16,000,000 and the MEJ case the debt is over $18,000,000. As an equity holder, Dr. Jones will not receive any distribution from the proceeds of the ERTC Claims. If the cases are non-surplus cases the Dr. Jones, the equity holder, lacks standing to pursue the Limited Objection. *Meadow v. Gottlieb (In re Teddi of Cal.)*, 2007 Bankr. LEXIS 4842, at *8 (B.A.P. 9th Cir. Mar. 26, 2007) ("The appellants, as equity holders in a case in which there will be no surplus, ordinarily lack standing to appeal a compromise of a dispute affecting the estate."); *see also C.W. Mining Co.,* 636 F.3d at 1265; *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 n.3 (2d Cir. 1988) ("the creditor differs from the 'hopelessly insolvent debtor' who is not

permitted to challenge orders affecting the estate because the estate will go entirely to the creditors, and the debtor has no interest in what happens to it.") See also In re Willemain, 764 F.2d 1019, 1022 (4th Cir 1985), ("An insolvent Chapter 7 debtor lacks standing to challenge a proposed sale of estate property because he lacks a pecuniary interest in such property"). "[T]o establish standing to object to disposition of the assets of the estate – including the settlement of a cause of action belonging to the estate – or to appeal from an order approving the same, the debtor bears the burden of showing a 'reasonable possibility' that a surplus will exist at the conclusion of the bankruptcy proceedings." See Osborne v. Tulis (In re Osborne), 2014 US Dist LEXIS 82364, at *10-11 (S.D.N.Y., June 17, 2024). "However, an insolvent Chapter 7 debtor lacks standing to challenge a proposed sale of estate property because he lacks a pecuniary interest in such property." Nisselson v. Roussopoulos (In re Roussopoulos), 198 B.R. 33, 44 at fn. 9 (E.D.N.Y. 1996).

45. Accordingly, Dr. Jones lacks standing as an equity holder in this matter to pursue the instant Limited Objection. Thus, the Limited Objection should be overruled.

46. To the extent not overruled due to a lack of standing the Limited Objection must still be overruled. The Limited Objection focuses primarily on the PBS Stipulation[4]. As to the PBS settlement, the Trustee believes that the settlement satisfies the standards for approval of a 9019 motion and should be approved.

47. The gravamen of the allegations raised in the Limited Objection and in the complaint filed by the Debtors pre-petition alleges that PBS did not account for the $3,477,375.42 of ERTC Claims and did not turn over to the Debtors the money that was allegedly collected by

[4] During the several zoom calls and emails, counsel for Dr. Jones questioned the amounts due both Itria and NALP. Counsel for the Trustee responded and provided the claims filed by both Itria and NALP in each of the Debtor's cases. In those claims Itria and NALP annex to the respective claim the detail for the calculations of their respective debt. The Trustee also requested that Dr. Jones provide the Trustee with any documents, records or calculations that demonstrated that the claims should be reduced. No documents to date have been so produced.

PBS. The Trustee and his professionals have reviewed the extensive documents and records received in connection with the ERTC Claims, spoken numerous times with counsel for PBS and engaged in zoom conference calls with PBS and the Trustee's accountants. Further, the Trustee considered the allegations in the complaint and is satisfied that the PBS settlement is in the best interests of the estate and its creditors.

48. In this connection, under the PBS Stipulation all the funds in the ERTC Claims are accounted for. Specifically, the PBS Stipulation sets forth what money PBS has recovered to date, what money has been applied, pre-petition, to their pre-petition debt, what money has been turned over to the Trustee and what funds remain to be collected. Most importantly, PBS in the Stipulation represents and warrants that the only monies that PBS has received on account of the Debtors' portion of the ERTC Claims are as follows: (a) in August 2023, PBS received a payment from the IRS attributable to the Debtors in the amount of $185,596.86, plus interest of $9,038.57, for the fourth quarter 2020; (b) in July 2025 PBS received an additional payment of $183,590.10, plus interest of $26,253.38, for the third quarter 2020; (c) in August 2025, (after the Petition Date) PBS received $825,700.40, plus interest of $133,350.62, for the first quarter 2021; and (d) in April 2026 PBS received $388,581.52, plus interest of $77,483.16 for the second quarter 2020. The PBS Stipulation provides that the Trustee is relying on such representations in entering into the PBS Stipulation. In the event of a breach of this representation the Trustee has the right to pursue a claim against PBS for any breach of the representation.

49. PBS's claim against the Debtors estates arises out of the fact that PBS paid $1,218,557.80, for the Debtors' payroll and tax liabilities. Pre-petition PBS applied $185,596.86, plus interest of $9,038.57 and $183,590.10, plus interest of $26,253.38 against the amounts the Debtors owed PBS.

50. PBS turned over a total of $1,424,865.70 to the Trustee. Based upon the total filed ERTC Claims there remains a total of $1,893,906.54, plus interest, remaining to be collected for the second quarter 2021 ($893,673.90) and for the third quarter of 2021 ($1,000,232.64).

51. The PBS Stipulation provides that PBS shall continue to pursue and seek to recover the remaining ERTC Claims on behalf of the Debtor's estates. As the ERTC Claims have been filed by PBS in the name of PBS OF CENTRAL FLORIDA LLC it is very important that PBS continue to assist in the recovery of the remaining ERTC Claims. Without PBS' cooperation the collection of the remaining ERTC Claims could be in jeopardy.

52. The Limited Objection also objects to any release of any claims that could be asserted by Dr. Jones, individually. To be clear the settlements are only settling the claims of these estates and not the independent direct claims of any third party. Dr. Jones retains his own independent direct claims. This language will also be included in the proposed order.

53. The Limited Objection also raises the issue that the settling parties are only entitled to a single satisfaction and one recovery. The Trustee agrees.

54. Counsel for Dr. Jones also raised the issue that the new NALP Stipulation provides that once the settlement payment of $750,000 is paid to NALP that NALP should release their respective liens and security interests on non-Debtors assets and collateral. As the Trustee's counsel advised counsel for Dr. Jones that is not accurate and the NALP release of its security interests is only as to this estate and the estate assets which include the ERTC Claims. This language will be clarified in the proposed order.

55. In reaching the determination to settle these intertwined and complex issues the Trustee considered that there were four parties asserting an interest in and to the ERTC Claims. Those parties include PBS, Itria, NALP and the estates. The Trustee then spent extensive time

resolving the issues and negotiating and renegotiating the terms of the various settlements. The party who filed the Limited Objection has no such interest in the ERTC Claims, is not a beneficiary of any of the proceeds of the ERTC Claims and is not a creditor of these estates. As such the Limited Objection should be overruled and the Stipulations approved.

**B. The Stipulations Should be Approved**

**i. *Legal Standards***

56. Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate. See In re Dewey & Leboeuf L.L.P., 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012).

57. Under Bankruptcy Rule 9019, the court has the authority to "approve a compromise or settlement." FED. R. BANKR. P. 9019(A). A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve a settlement. See In re Drexel Burnham Lambert Grp., Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing Protective Comm. for Indep. S'holders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968)). See also Topwater Exclusive Fund III, L.L.C. v. SageCrest II, L.L.C. (In re Sagecrest II), Nos. 3:10cv978 (SRU), 3:10cv979 (SRU), 2011 WL 134893, at *8-9 (D. Conn. Jan. 14, 2011); Cousins v. Pereira (In re Cousins), No. 09 Civ. 1190(RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010); In re Chemtura Corp., 439 B.R. 561, 593–94 (Bankr. S.D.N.Y. 2010); In re Lehman Bros. Holdings, Inc., 435 B.R. 122, 134 (S.D.N.Y. 2010).

58. A court's responsibility is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Chemtura, 439 B.R. at 594 (quoting In re W.T. Grant, Co., 699 F.2d 599, 608 (2d Cir. 1983)) (internal quotations omitted). However, the court is not required to go so far as to conduct a trial on the terms to approve a settlement. Id.

Rather, the court may rely upon the opinions of the trustee, the parties and their attorneys to evaluate the settlement and to make an independent judgment. See In re Adelphia Commc'ns. Corp., 368 B.R. 140, 225-26 (Bankr. S.D.N.Y. 2007).

59. The court must inform itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." O'Connell v. Packles (In re Hilsen), 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (quoting TMT Trailer Ferry, 390 U.S. at 424) (internal quotations omitted). The United States Court of Appeals for the Second Circuit outlined the test for consideration of settlements under the Bankruptcy Rules in Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007). The factors to be considered are interrelated and require the court to evaluate:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;" (4) whether other parties in interest support the settlement; (5) "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors;" and (7) "the extent to which the settlement is the product of arm's length bargaining."

Id. (internal citations omitted). The burden is on the settlement proponent to persuade the court that the settlement is in the best interests of the estate. See 8 NORTON BANKRUPTCY LAW AND PRACTICE 3D § 167:2 (3d ed. 2011).

***ii. The Stipulations Fall Above the Lowest Point in the Range of Reasonableness***

60. Here, there were competing claims in and to the ERTC Claims by Itria, PBS, NALP and the estate. To avoid protracted and uncertain litigation it was necessary to reach a resolution with Itria, PBS and NALP as set forth in the enclosed revised Itria Stipulation, revised PBS

Stipulation and the NALP Stipulation.

61. The enclosed settlements are clearly in the best interests of the estate and satisfy the Rule 9019 standards for approval. If not for these resolutions, there would be litigation over who was authorized to collect and pursue the ERTC Claim and who was entitled to the Funds held by the Trustee and any future funds on account of the ERTC Claims. In this regard, the initial objection filed by NALP is evidence of such dispute and uncertainty in the absence of the annexed agreements. Most importantly, there is certainly no assurance that the estates would prevail in any litigation. But what is known is that hundreds of thousands of dollars in administrative costs and expenses with significant delays would be incurred. The resolutions resolve all those difficult issues and concerns, save many dollars for the estate and create an estate for creditors.

62. The Parties engaged in arms-length settlement negotiations through their respective counsel and exchanged various documentation in support of their respective positions. The Trustee also considered the potential administrative costs that could be incurred with litigation over the ERTC Claims. Ultimately, the benefits embodied in each of the Stipulations outweigh the potential benefits of protracted litigation, including motion practice that would be contested and the outcome of which is necessarily uncertain. These proposed settlements bring a tangible benefit to the estate and avoid the need for litigation, along with the prospect of incurring additional fees, costs and expenses. The Trustee determined in his reasonable business judgment that settling now was in the best interests of the estate, and that the settlements embodied in the annexed Stipulations are fair and reasonable within the governing standards outlined above.

63. For these reasons, and as more fully set forth in this Amended Motion, the Trustee respectfully requests the approval of the annexed Revised Itria Stipulation, the annexed Revised PBS Stipulation and the NALP Stipulation.

## NOTICE AND NO PRIOR REQUEST

64. Notice of this Amended Motion will be provided in accordance with Bankruptcy Rule 2002(a)(3).

65. No previous application for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order, substantially in the form annexed as Exhibit D: (i) approving the Revise Itria Stipulation, the Revised PBS Stipulation and the NALP Stipulation; and (ii) granting the Trustee such other and further relief as may be just and appropriate.

Dated: August 21, 2026
Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory M. Messer, as Chapter 7 Trustee*

By: */s/ Gary F. Herbst*
Gary F. Herbst, Esq.
Melanie A. FitzGerald, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500